## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ERIK TAUBE, DMD, DBA TAUBE FAMILY DENTAL, on behalf of himself and all others similarly situated,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 20-cv-00565-NJR** |
| **HARTFORD FINANCIAL SERVICES GROUP INC., DBA THE HARTFORD, a Delaware Corporation, and TWIN CITY FIRE INSURANCE COMPANY, an Indiana Corporation,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Dismiss Plaintiff Erik Taube's First Amended Complaint filed by Defendant Hartford Financial Services Group Inc. ("HFSG") (Doc. 32). For the reasons set forth below, the motion is granted in part and denied in part.

### FACTUAL & PROCEDURAL BACKGROUND

Before the COVID-19 pandemic hit, Eric Taube, a dentist from Mascoutah, Illinois, "purchased a commercial insurance policy from The Hartford [("The Hartford")]" (Doc. 27, p. 3). The policy purportedly provides coverage "for direct physical loss of or physical damage to Covered Property at the premises . . . caused by or resulting from a *Covered Cause of Loss*" (*Id.* at p. 21) (emphasis added). The policy also includes coverage

for loss of business income "caused by or resulting from a *Covered Cause of Loss*" (*Id.* at p. 22) (emphasis added).

During the pandemic, Taube unfortunately lost income from shutting down his practice "except to see patients for non-elective and urgent care" (*Id.* at p. 18). As a result, Taube submitted a claim for coverage of his losses to The Hartford noting that COVID-19 is a "covered cause of loss" under the policy (*Id.* at p. 28). The Hartford allegedly denied the claim for coverage, explaining that the insurance policy does not cover losses caused by COVID-19 (*Id.*).

Taube commenced this action against HFSG, doing business as The Hartford, and Twin City Fire Insurance Company ("Twin City") (Doc. 27). In all, Taube brings six claims against HSFG and Twin City: business income breach of contract (Count I); damages pursuant to 215 ILCS 5/155 (Count II); declaratory relief applicable to business income (Count III); extra expense breach of contract (Count IV); another claim of damages pursuant to 215 ILCS 5/155 (Count V); and declaratory relief applicable to extra expense (Count VI). Taube also seeks to represent other similarly situated "persons and entities operating dental practices in Illinois" (*Id.* at p. 3). [1]

---

[1] The Court appears to have subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1332(d). Under CAFA, federal courts have jurisdiction over cases in which (1) the class consists of 100 or more members, *see* 28 U.S.C. § 1332(d)(5)(B); (2) any plaintiff is a citizen of a state different from that of any defendant, 28 U.S.C. § 1332(d)(2)(A); and (3) the aggregate amount of the plaintiffs' claims exceeds $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), (d)(6). Specifically, Taube alleges "there is complete diversity between Defendants and at least one member of the class; there are more than one hundred members of the class; and the amount in controversy exceeds $5,000,000.00" (Doc. 27, p. 10). Taube plans on ascertaining the precise number of members of the class from Twin City's records (*Id.* at p. 30). But Taube makes a conclusory allegation that the amount in controversy exceeds $5,000,000, and fails to explain why this is so.

Still, the Court has subject matter jurisdiction on the basis of diversity of citizenship. The parties are minimally diverse, as Taube is a citizen of Illinois (*see* Doc. 44); HSFG is a Delaware corporation with its

HFSG timely filed a Motion to Dismiss, arguing the First Amended Complaint fails to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. 32). Additionally, HFSG argues the Court lacks personal jurisdiction over it under Federal Rules of Civil Procedure 12(b)(2).

ANALYSIS

## I.      HFSG's Motion to Dismiss for Lack of Jurisdiction

To survive a motion seeking dismissal under Federal Rule of Civil Procedure 12(b)(1), a plaintiff must "'clearly . . . allege facts demonstrating' each element'" required to establish he or she has standing. *See Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). The "irreducible constitutional minimum" of standing requires a showing that a plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*

The Seventh Circuit has recognized two types of challenges to standing. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). "Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Id.* Factual challenges allow district courts to look beyond the allegations and consider evidence that has been submitted on the issue

---

principal place of business in Connecticut, and Twin City is an Indiana corporation with its principal place of business in Connecticut (*see* Doc. 27). The amount of controversy exceeds $75,000.00, exclusive of interest and costs, because the limit of insurance as to business income and extra expense is $500,000 (Doc. 27-1, p. 21). Additionally, under 215 ILCS 5/155, Taube could be entitled to an additional amount not to exceed any one of the following amounts: (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs; (b) $60,000; (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

*Id.* at 444 (citing *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008)). During a factual challenge, defendants contend there is "*in fact* no subject matter jurisdiction." *Id.* (quotation marks and citation omitted).

In *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015), the Court clarified the standard for facial challenges to standing. The Court noted that "in evaluating whether a complaint adequately pleads the elements of standing, courts apply the same analysis used to review whether a complaint adequately states a claim: [C]ourts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Id.* (quotation marks and citation omitted). The Court continued, finding that "when evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly–Iqbal's* plausibility' requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Id.* at 174.

HFSG's standing argument appears to be a facial challenge. Specifically, HFSG argues that Taube lacks standing to sue HFSG because "[Taube] does not have a contract with HFSG, and his alleged injury is not fairly traceable to HFSG" (Doc. 33, p. 13). On the surface, it would appear that HFSG has a sound argument because the Seventh Circuit and district courts have acknowledged that *nonparties* to contracts generally lack standing to *bring* breach of contract claims. *See Laurens v. Volvo Cars of N. Am., LLC*, 868 F.3d 622, 626 (7th Cir. 2011); *Apex Digital, Inc.*, 572 F.3d at 443–45; *Pittsfield Dev., LLC v. Travelers Indem. Co.*, 2019 WL 3287841, at *3 (N.D. Ill. July 22, 2019); *Medina v. Pub. Storage, Inc.*, 2014 WL 1715517, at *4 (N.D. Ill. Apr. 30, 2014).

Taube is a party to the contract, however, and he is the one *bringing* the breach of contract claims (Doc. 27). Applying the Seventh Circuit's standard for facial challenges to standing, Taube alleges a contract with The Hartford, who HFSG was purportedly "doing business as,"[2] and he suffered harm when The Hartford denied coverage, thus the Court finds Taube has sufficiently alleged standing.[3]

## II.     HFSG's Motion to Dismiss for Failure to State a Claim

The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case or decide whether a plaintiff will ultimately prevail. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.* For purposes of a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and draw all possible inferences in favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012).

---

[2] HFSG concedes that "The Hartford" is a "registered trademark used by HFSG and its subsidiaries . . . ." (Doc. 33, p.15).

[3] The Eighth and Ninth Circuits in nearly identical cases have recognized that "it's not clear why courts dismiss contract-based claims against defendants that are not parties to the contract under Rule 12(b)(1) instead of Rule 12(b)(6)." *Founder Inst. Inc. v. The Hartford Fire Ins. Co.*, 2020 WL 6268539, at *1 (N.D. Cal. Oct. 22, 2020) (although ultimately finding that plaintiffs lacked standing against defendant); *see also Robert E. Levy, D.M.D., LLC v. The Hartford Fin. Servs. Grp. Inc.*, 2020 WL 6582671, at *2 (E.D. Mo. Nov. 10, 2020) (quoting the language in *Founder* and holding that "The Hartford Financial thus asks the Court to evaluate the merits of Plaintiffs' breach of contract claim when assessing subject matter jurisdiction, which it must refrain from doing").

But district courts may consider documents attached to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to his claim." *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). "[T]his is a narrow exception aimed at cases interpreting, for example, a contract." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). "The court is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) (quoting 5 Wright & Miller, *Federal Practice & Procedure: Civil 2d*, § 1327 at 766 (1990)).

Like HFSG's standing argument, HFSG points out that "[Taube] fails to allege that he has a contractual relationship with HFSG," and thus fails to state a claim for breach of contract or to obtain a declaratory judgment under a contract (Doc. 33, p. 17). In a diversity case, the Court applies state law to substantive issues. *RLI Ins. Co. v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008). When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits. *See Koransky, Bouwer & Poracky, P.C. v. Bar Plan Mut. Ins. Co.*, 712 F.3d 336, 341 (7th Cir. 2013). Here, the parties have not raised a conflict of law issue and have instead briefed the issues on the merits under Illinois law. The Court, as a result, will apply the law of Illinois.

A breach of contract claim requires "the existence of a valid and enforceable contract, plaintiff's performance, defendant's breach of the terms of the contract, and damages resulting from the breach." *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 730 (7th Cir. 2014) (citing *Lindy Lu LLC v. Ill. Cent. R.R. Co.*, 984 N.E.2d 1171, 1175 (Ill.

App. Ct. 2013)). But "[o]nly parties to a contract can be liable for breach of contract." *Odeluga v. PCC Cmty. Wellness Ctr.*, 2013 WL 4552866, at *4 (N.D. Ill. Aug. 27, 2013) (citing *Credit Gen. Ins. Co. v. Midwest Indem. Corp.*, 916 F. Supp. 766, 772 (N.D. Ill. 1996)); *see also Northbound Grp., Inc. v. Norvax, Inc.*, 795 F.3d 647, 650 (7th Cir. 2015) ("[i]t goes without saying that a contract cannot bind a nonparty") (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002)).

Taube argues HFSG is a party to the policy because the policy repeatedly references The Hartford (Doc. 36, p. 9). Taube points to the first page of the policy which states that the policy is from The Hartford (Doc. 27-1, p. 2). Taube continues by referring to another page of the policy which states, "[Taube] [is] a valued customer of The Hartford" (*Id*. at p. 4). Taube also alleges that the 225-page policy "refers to 'The Harford' more than 100 times[—] [ ]not even counting the many appearances of the corporate logo, which consists of the words, 'The Hartford,' below a reindeer[.]"[4]

After reviewing the allegations in the complaint, the insurance policy, and the other judicially noticeable materials,[5] the Court finds HFSG is not a party to the policy. Taube insists that The Hartford issued the policy even though Taube's policy explains that "[t]his insurance is provided by the *stock insurance company* of The Hartford

---

[4] The Hartford's logo is not a reindeer. The Hartford has elegantly explained that "[the] trademark logo echoes the majestic stag depicted in Sir Edwin Landseer's 1851 painting Monarch of the Glen." THE HARTFORD, *The Hartford Fact Sheet*, https://s0.hfdstatic.com/sites/the_The Hartford/files/facts-about-the-The Hartford.pdf (last visited Feb. 11, 2021).

[5] This Court may consider documents attached to pleadings without converting a motion to dismiss into a motion for summary judgment, as long as the documents are referred to in the complaint and central to the plaintiff's claims. *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014); *see Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012) (noting that "[a] motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice").

Insurance Group shown below," and lists Twin City as the insurer (Doc. 27-1, p. 12) (emphasis added). Indeed, "HFSG," "The Hartford Financial Services Group," and "The Hartford Financial," are not included anywhere in the policy.

Taube also argues that the term "The Hartford" is ambiguous, and "[a]mbiguous terms are construed strictly against the drafter of the policy and in favor of coverage." (Doc. 36, p. 12) (quoting *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1217 (Ill. 1992)). Not only has Taube failed to allege facts that HFSG was a drafter of the policy, but also "The Hartford" is not a policy term that limits an insurer's liability. *See Hobbs v. The Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005) ("[a]lthough policy terms that *limit* an *insurer's liability* will be liberally construed in favor of coverage, this rule of construction only comes into play when the policy is ambiguous") (emphasis added). Taube concedes Twin City is listed as the "insurer" for the effective policy period of September 10, 2019 to September 10, 2020 (Doc. 27, p. 20). Accordingly, the term "The Hartford" must *limit* Twin City's *liability* of providing coverage to be a policy term. The problem is Taube is not arguing the meaning of "The Hartford" to ensure coverage—Taube is arguing the meaning of "The Hartford" to add HFSG to the policy.

Even if "The Hartford" is a policy term, it is not ambiguous. Taube's policy includes the following language: "your Policy was issued by The Hartford *writing company* identified on your policy Declarations page . . . ." (Doc. 27-1, p. 6) (emphasis added). Then on the first page of the Declarations Page, the policy identifies Twin City as the company providing insurance (*Id*. at p. 12). Accordingly, HFSG's Motion to Dismiss for failure to state a claim is granted.

III.    **Alter Ego Liability**

Taube argues "the Court should allow discovery on whether HFSG is the alter ego of the other Defendants" (Doc. 36, p. 23). Notably, Taube's complaint contains no allegations regarding the corporate relationship between HFSG and The Hartford or Twin City or about the level of control, if any, that HFSG exerted over The Hartford or Twin City's procedures.

Taube's response to HFSG's Motion to Dismiss, however, spills considerable ink regarding the fact that Ms. Levin, Mr. Elliot, and Ms. Castaneda signed the insurance policy (Doc. 36, pp. 12-14). Taube points out that neither Ms. Levin nor Mr. Elliot "say whose President and Secretary they are" (*Id*. at p. 12). Taube continues noting that Ms. Levin's LinkedIn page indicates that her employer for the past 13 years has been HFSG, Mr. Elliot is the President of HFSG, and Ms. Castaneda's LinkedIn suggests that she is the Vice President and P&C compliance Officer of "The Hartford," "where she has worked for nearly 15 years . . . ." (*Id*. at pp. 12-14). Taube also attaches a letter from Gregory Waller to the complaint, dated June 3, 2020, rejecting his claim for coverage (Doc. 27-2). Gregory Waller's signature block, however, includes the *writing company* as Twin City (*Id*. at p. 3). Taube includes other exhibits, such as:

-   A copy of an email from The Hartford to Taube regarding the withdrawing of payments;

-   A picture of The Hartford's Investor Relations page displaying the HFSG stock price

(Doc. 27, pp. 9-10; Doc. 36, p. 11).

Allowing Taube to proceed against HFSG under an alter ego liability theory based on the above arguments appears to conflict with the well-established principle of corporate law that "directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." *United States v. Bestfoods*, 524 U.S. 51, 69 (1998). In fact, in *Northbound Grp., Inc.*, 795 F.3d at 652, the Seventh Circuit was presented with an alter ego liability theory and rejected it, noting that the plaintiff offered no evidence that respecting the separate corporate existence of the defendant would "sanction a fraud or promote injustice." While the decision was at summary judgment, the Court acknowledged that "[t]his showing is especially difficult for a party to make in a *breach of contract action* where 'courts should apply even more stringent standards to determine when to pierce the corporate veil than they would in tort cases.'" *Id.* (quoting *Tower Inv'rs, LLC v. 111 E. Chestnut Consultants, Inc.*, 864 N.E.2d 927, 941 (Ill. App. Ct. 2007)) (emphasis added).

But simply because it may be difficult for Taube to pierce the corporate veil—does not prohibit Taube from amending his complaint, and conducting discovery into this alter ego theory. Accordingly, the Court grants Taube leave to amend his complaint. The Court will by separate order set this matter for a telephonic status conference for the purpose of entering a scheduling order on alter ego discovery.

## CONCLUSION

For these reasons, the Motion to Dismiss filed by Defendant HFSG (Doc. 32) is **GRANTED in part and DENIED in part**. As Taube fails to state a claim, the Court need not address HFSG's arguments as to personal jurisdiction.

The Court dismisses Taube's claims against HFSG without prejudice. Taube has until **March 11, 2021**, to file a Second Amended Complaint consistent with Rule 11.

**IT IS SO ORDERED.**

**DATED:  February 18, 2021**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**